ATTORNEYS HARTMAN, CHARTERED
Blason II
505 S. Lenola Road, Suite 121
Moorestown, NJ 08057
(856) 235-0220
Our File Nos. 12-1087
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MYRA I. EBERWINE** | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | |
| **ATLANTIC COUNTY, WARDEN GERALDINE COHEN, DEPUTY WARDEN DAVE COHEN, CAPTAIN JEFFREY GIBERSON, LT. MICHAEL KELLY, AND SGT. PATRICK ROBINSON, INDIVIDUALLY AND IN OFFICAL CAPACITY** | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendants | |

## <u>COMPLAINT</u>

Plaintiff, Myra I. Eberwine, (hereinafter "Eberwine"), an adult individual whose permanent residence is 111 Pembroke Road, Egg Harbor Township, County of Atlantic, State of New Jersey, by way of complaint against the defendant makes the following averments:

1. This is a civil action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §4301-4335 ("USERRA").

1

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331, and 38 U.S.C. §4323(b), The Uniformed Services Employment and Reemployment Rights Act of 1994 38 U.S.C. §4301-4335 ("USERRA").

3. Plaintiff also invokes the pendent jurisdiction of this Court pursuant to 28 U.S.C. §1367 to consider claims arising under State Law as each such claim arises out of the same nucleus of operative facts as those that give rise to plaintiff's Federal claims.

4. Venue is proper in this judicial district under 38 U.S.C. §4323(c), and 28 U.S.C. §1391(b); Defendant, Atlantic County, is located in this judicial district, and a substantial part of the events giving rise to this suit occurred in this judicial district.

## PARTIES

5. Plaintiff's permanent residence is 111 Pembroke Road, Egg Harbor Township, County of Atlantic, State of New Jersey

6. At all times relevant hereto, plaintiff, Myra I. Eberwine was a member of the New Jersey Air National Guard, with the current rank of Staff Sergeant, having joined the military on June 16, 2006.

7. At all times relevant hereto plaintiff, Myra I. Eberwine was an "employee" (as defined in 38 U.S.C. §4303(3)) of defendant, Atlantic County Department of Public Safety, Division of Adult Detention (hereinafter "Atlantic County"),

2

from October 4, 2004, to present, and performed her work in a competent and efficient manner.

8. At all times relevant hereto, Defendant Atlantic County was a New Jersey Government "employer" (as defined in U.S.C. §4303(4)(A)), with its principal place of business at 5060 Avenue, Mays Landing, New Jersey.

9. At all times relevant hereto, Defendants: Warden Geraldine Cohen, Deputy Warden Dave Cohen, Captain Jeffrey Giberson, Lt. Michael Kelly, and Sgt. Patrick Robinson, as the supervision and leadership staff of the Atlantic County Jail, acted in their official capacity, and in their individual capacity.


## **FACTUAL BACKGROUND**

10. Plaintiff incorporates the foregoing paragraphs of this complaint as if fully set forth herein.

11. On March 25, 2012, Plaintiff was assigned to the Classifications Unit, within the Atlantic County Jail system.

12. Plaintiff subsequently received a series of Military Orders to report for Military Duty pursuant to her membership in the Air National Guard.  The Military Orders required Plaintiff to be absent from her job at the Atlantic County Jail.  The relative Orders and associated dates of military service are as follows:

    a)  ORDER (Dated: June 22, 2012)
        Required 1-day of military service on July 13, 2012.

3

b) <u>ORDER (dated: July 17, 2012)</u>
Required 4-days of military service from July 24, 2012 – July 27, 2012.

c) <u>ORDER (dated: July 17, 2012)</u>
Required 4-days of military service from July 31, 2012 – August 3, 2012.

d) <u>ORDER (dated: June 1, 2012)</u>
Required 15-days of military service from August 18, 2012 – September 1, 2012 (this is the Annual 2-week Deployment).

13. Plaintiff made proper notification to her employers at Atlantic County for each of the military orders cited above.

14. Plaintiff served her military service for each of the date ranges listed above.

15. On July 23, 2012, Plaintiff was called into Lt. Michael Kelly's Office at the Atlantic County Jail.  There, she was met by Lt. Michael Kelly and Sgt. Patrick Robinson.  Sgt. Robinson and Lt. Kelly, advised Plaintiff that they were removing her from the Classifications Unit because of her military status.

16. During that July 23, 2012, meeting, Sgt. Robinson referred to Plaintiff's military deployment (referring specifically to the then-pending 15-day annual deployment scheduled for August 18, 2012 – September 1, 2012) as a "vacation."

17. During that same meeting, Lt. Kelly advised Plaintiff that "we are at war right now, and you can be activated at any time, and this unit cannot handle that type of leave."

18. Plaintiff advised both Lt. Kelly and Sgt. Robinson that it was against the law to do what they were doing and further requested documentation stating the reasons why she was being removed from Classifications.  In response, Lt.

Kelly and Sgt. Robinson advised Plaintiff that they were not moving her out of Classifications to punish her.

19. Later that same day, Plaintiff again met with Lt. Kelly in his office to request documentation about her removal from Classifications. Only Lt. Kelly and Plaintiff were present for that meeting.

20. Plaintiff received an Inter-Office Memo, dated July 23, 2012, from "Lt. Michael R. Kelly, Classifications Unit" indicating the following: "Effective Sunday, 7/29/12, you will be transferred out of the Classifications unit. Your shift and days off will be assigned by the Operations Unit." No reasons were cited in the memo for that action. The Memo was copied to Warden Cohen, Deputy Warden Cohen, and Cpt. Giberson.

21. On July 23, 2012, Plaintiff filed an on-line complaint form with Employers Support Guard and Reserves (E.S.G.R.) and was assigned Mr. Joseph Deblasio as her representative.

22. On July 23, 2012, Plaintiff advised F.O.P. 34, Union President, Officer George Herbert via telephone about the removal from the Classifications Unit.

23. On July 25, 2012, Plaintiff met with Deputy Warden David Cohen and Lt. Michael Kelly. At that time, Plaintiff was again advised by Lt. Kelly that the reason for her dismissal from the Classifications Unit was due to her military days off, and extended orders. Deputy Warden Cohen advised Plaintiff that he agreed with Lt. Kelly and confirmed that Plaintiff was being removed from

the Classifications Unit due to her extended leave days associated with military orders.

24. On July 29, 2012, Plaintiff was required to report to an assignment in the Main Jail, after unlawfully being removed from the Classifications Unit, because of her military status.

25. On July 30, 2012, Deputy Warden David Cohen failed to meet with Plaintiff (as he had previously agreed) and failed to provide documentation to Plaintiff stating the reasons for her removal from the Classifications Unit.

26. On July 31, 2012, F.O.P. representative, Mr. Plotkin spoke with Deputy Warden Cohen and inquired if Deputy Warden Cohen was aware that Plaintiff had been removed from the Classifications Unit because of her military status. Deputy Warden Cohen nodded his head in the affirmative as a response. Deputy Warden Cohen then advised Mr. Plotkin that he would speak to Warden Geraldine Cohen (no relation) about the situation.

27. On July 31, 2012, Deputy Warden Dave Cohen admitted to E.S.G.R., Joseph Deblasio that Plaintiff had been removed from the Classifications Unit because of her military status. Deputy Warden Cohen further advised Deblasio that reinstatement was a possibility, but that he was not the only person involved in the decision making process.

28. On August 1, 2012, Warden Geraldine Cohen admitted to E.S.G.R. Joseph Deblasio that Plaintiff had been removed from the Classifications Unit because of her military status. Warden Cohen also inquired with Deblasio what she

should do with Officer Heather Jones, the officer that they had assigned to replace Plaintiff in the Classifications Unit. Deblasio advised Warden Cohen that the replacement officer had to be sent back in order to reinstate Plaintiff.

29. On August 2, 2012, an agreement to reinstate Plaintiff back to her original position in the Classifications Unit was reached between E.S.G.R. Joseph Deblasio, Warden Geraldine Cohen, Deputy Warden David Cohen, and County Counsel Mr. Richard Adrien.

30. However, instead of being reinstated back to her original position, Plaintiff was provided with a schedule that was not her original schedule and Officer Jones remained in Plaintiff's position in the Classifications Unit. Plaintiff was further advised by Captain Giberson and Lt. Kelly that she was to be responsible now for working all roles, positions and shifts that fell underneath the supervision of Lt. Michael Kelly. At the same time, Officer Jones (the officer who had been assigned to replace Plaintiff as a permanent Classifications Officer) remained in the Classifications Unit.

31. Plaintiff remained constructively removed from her original position given that she was not reinstated properly. This situation caused her schedule to be potentially at odds with that of her husband (also a Corrections Officer with Atlantic County) and thus created the potential of child care issues. This result added to the hostile working environment suffered by Plaintiff.

32. On August 3, 2012, Warden Geraldine Cohen sent an email to Plaintiff advising that Plaintiff was assigned to the "Admissions/Classifications Unit"

and that Plaintiff was to be available for all job roles falling under the penumbra of that consolidated unit. Prior to that email, the "Admissions Unit" and the "Classifications Unit" were under the supervision of the same person, but were treated as separate entities.

33. On August 6, 2012, Plaintiff notified the U.S. Department of Labor about the situation via email and was assigned a point of contact: Mr. Robert Ranger, Assistant Director, U.S. Department of Labor, Veteran's Employment and Training Service, New Jersey.

34. On August 13, 2012, Plaintiff mailed a Complaint Form of Discrimination to the E.E.O.

35. On August 15, 2012, Plaintiff was advised she would be "reinstated" to her original position; however now Defendants referred to her unit as the "Admissions/Classifications" Unit.

36. On August 17, 2012, Plaintiff worked in the "Admissions/Classifications" unit. On that date, Plaintiff only spent (4) hours (from 7:30 A.M. to 11:30 A.M) working in Classifications. Plaintiff was not able to sit at her previously assigned desk. Officer Jones remained assigned to Classifications, and continued to sit at the desk previously assigned to Plaintiff.

37. On August 17, 2012, Plaintiff requested of Lt. Kelly that he forward the September work schedule to her personal email because she was about to depart on military orders for her annual 2-week deployment, scheduled to begin August 18, 2013.

8

38. On August 17, 2012, Lt. Kelly emailed Plaintiff at her personal email address. The email contained a link so that Plaintiff would be able to access her work email from a remote location.

39. On August 17, 2012, Plaintiff also requested from Lt. Kelly that she be notified if they decided to offer a change in "days off." Plaintiff advised Lt. Kelly that she would check email periodically while she was on deployment. Plaintiff also advised Lt. Kelly that she had seniority over Officer Brian Buddy, and Officer Heather Jones.

40. On August 23, 2012, F.O.P. 34 Union President, Officer George Herbert and Vice President, Officer Jeffrey Creighton filed a grievance on behalf of Plaintiff; Warden Geraldine Cohen neglected to respond to the grievance.

41. On August 29, 2012, Plaintiff was absent from the Atlantic County Jail due to deployment on military orders. At that time, a change in days-off was offered to other employees by Defendants at Atlantic County. Officer Brian Buddy, and Officer Jones (whom had originally replaced Plaintiff's position in Classifications) were both offered the change in "days off." Plaintiff was not provided with the same offer notwithstanding her prior request to Lt. Kelly, and notwithstanding her seniority over both officers.

42. On August 31, 2012, while still on deployment, Plaintiff received an email from Lt. Kelly ordering that Plaintiff be assigned to a desk in the file room (rather than her original location) thus alienating Plaintiff from the other

Classification Unit members, and further penalizing plaintiff for her military service.

43. Plaintiff was also issued a memo, dated August 31, 2012, from "Lt. Michael R. Kelly, Classifications Unit" in which she was advised about the change in her desk assignment and relocation into the file room.  Plaintiff received this memo on September 2, 2012, from Captain Pappas.

44. In Approximately August, 2012, Warden Geraldine Cohen made statements to Civilian Staff Members Donna Brooks and Laurie Doughty that she (Warden Cohen) had denied Plaintiff military leave, and further stated that Plaintiff was handing in military orders out of spite.

45. In September, 2012, a position of day reporting became vacant; however, the supervisors at Atlantic County failed to post the available position.  Plaintiff had previously made it known that she was interested in the position and had been advised previously (by previous Warden Joseph Bondiskey) and Deputy Warden Dave Cohen (a Captain at the time) that Plaintiff was at the top of the list for selection when the job became vacant.  Plaintiff arrived back from deployment and learned that the position had already been filled by Officer Champion who was to begin reporting to that position on September 9, 2012.

46. On September 3, 2012, Plaintiff contacted Lt. Iulliucci and requested that Internal Affairs conduct an investigation into the entire matter.

47. On September 11, 2012, Plaintiff received a memo from Lt. Michael R. Kelly. In the header of that memo, Lt. Kelly described his title as "Admissions/

Classifications Unit Commander." The memo was addressed to "All Admissions/Classifications Custody Staff." The subject line indicated "Re: Admissions/Classifications Unit Staffing."

48. Contained within the narrative of the September 11, 2012, memo, employees were notified that "because of the fluid nature of the jail (being a 24 hour operation, 365 days a year), it is necessary to train personnel in all facets of the operation for maximum efficiency." The memo also indicated that "There will continue to be occasions where it may be necessary to change job assignments, days off and/or shifts on short notice to accommodate for staffing shortages." Further, the memo stated: "Accordingly, custody staff for the unit will continue to be expected to waive the right to 30 days' notice for exchange in job assignment shift and/or days off, in order to serve the unit and have the benefit of a flexible schedule."

49. Lt. Kelly ordered Plaintiff to sign the September 11, 2012, memo and stated that if Plaintiff did not sign the memo that she would not be able to remain in the Classifications Unit.

50. By contrast, Officer Heather Jones (whom had been assigned to replace Plaintiff in the Classifications Unit) was not required to sign the memo.

51. On October 9, 2012, Warden Cohen attended a meeting with the U.S. Department of Labor about Plaintiff's case. During that meeting, Warden Cohen admitted that Lt. Kelly had approached her previously about the issue

regarding Plaintiff's military leave day.  Warden Cohen admitted that she responded to Lt. Kelly by stating: "do what you have to do, it's your unit."

52. On October 12, 2012, Plaintiff received an email from Mr. Robert Ranger, Assistant Director, U.S. Department of Labor, Veteran's Employment and Training Service, New Jersey.  The email indicated that during the October 9, 2012, meeting, Warden Cohen admitted that Plaintiff's rights were violated because of her military status.

53. On October 15, 2012, Plaintiff received a letter from the United States Department of Labor indicating that their investigation found evidence that Plaintiff's military obligations were a factor in Atlantic County's improper reinstatement after Plaintiff's return from military duty.

54. On December 3, 2012, Plaintiff was advised that she, Officer Brian Buddy, and Officer Heather Jones were being rotated out of the Classifications Unit due to "cross-training."  Plaintiff questioned Lt. Kelly and Sgt. Robinson about the process and plan; Lt. Kelly and Sgt. Robinson provided no answers to her other than stating "to be determined."

55. On December 3, 2012, Officer Brian Buddy confronted Plaintiff in an aggressive manner, very angry, and stated that the rotation was all the fault of Plaintiff.  Officer Buddy also told Plaintiff that Sgt. Robinson and Lt. Kelly had advised him that they had to remove him from the Classifications Unit because of Plaintiff's military discrimination/retaliation case.  Officer Buddy

blamed Plaintiff for all of the changes.  Plaintiff feared for her safety and her job as a result of this confrontation.

56. On December 4, 2012, an inter-office memo was sent to Plaintiff, from "Lt. Michael R. Kelly, Classifications Unit."  The memo's subject line was listed as "Re: Temporary Assignment."   The narrative of the memo stated the following: "Effective Sunday January 6, 2013, you will be assigned to admissions shift#2 Thur/Fri RDO.  This is to enable us to train additional officers in classifications duties."  The memo was copied to Warden Cohen, Captain Pappas, and Captain Giberson.

57. On December 10, 2012, Plaintiff filed a confidential report pertaining to the confrontation by Officer Brian Buddy.  Plaintiff further spoke to Lt. Steven Iulluicci about the confrontation by Officer Buddy and expressed her fears. Plaintiff suffered anxiety and panic attacks as a result of the situation.

58. Plaintiff had to be placed on stress medication and had to wear a heart-rhythm monitor.   Plaintiff was further prescribed high blood pressure medication to help control an irregular heart rhythm.

59. Plaintiff also suffered damages when she was forced to take a medical/stress leave due to the combination of events she was subject to.  This caused Plaintiff to lose vacation time, sick time, compensatory time and administrative time.

60. On December 20, 2012, Plaintiff received a letter from Nancy Marzolino, EEO Officer, Atlantic County Government, Department of Administrative Services.

13

In that letter, Ms. Marzolino advised Plaintiff that she completed the investigation of her complaint alleging discrimination, retaliation and harassment due to Plaintiff's military status.

61. Ms. Marzolino further indicating that her conclusion was that there was a violation of County Policy 4.02 (Non-Discrimination) and a violation of County Policy 3.02 (Workplace Standards).   Marzonlino also stated "In addition, other issues came to light during the investigation and have been addressed with the Department."   No remedy or plan for remedy was provided to Plaintiff in that letter.  That letter was copied to Gerald DelRosso, County Administrator, Department Head.

62. On January 02, 2013, Plaintiff received the findings of the Internal Affairs investigation she had initiated regarding the discrimination and retaliation she had suffered.  The findings were provided to Plaintiff, verbally by Lt. Steven Iuillucci of the Atlantic County Department of Public Safety Professional Standards Unit.

63. Within those findings, Lt. Iuillucci advised Plaintiff that she had been removed from the Classifications Unit in violation of USERRA, but that it was a "training issue."  Lt. Iuillucci also advised Plaintiff that there was no loss suffered by her because she was eventually placed back into the Classifications Unit.

64. Lt. Iuillucci further found that there had been "no deliberate indifference" toward Plaintiff.  Further, notwithstanding the multiple emails and memos

14

that had been copied to Lt. Giberson, Lt. Iuillucci also found that the allegation that Lt. Giberson had knowledge of the situation was unfounded.

65. Lt. Iuillucci further found that Plaintiff's having been passed over for a promotion was a result of a change in Wardens, and further found that Plaintiff's desk being moved was a result of Officer Jones needing further training in Classifications.  This reasoning was in direct contrast to Warden Cohen's previous statement in a meeting with the Department of Labor that Plaintiff's desk was moved because of a conflict that two other staff members had with each other.

66. Lt. Iuillucci made no findings as to Plaintiff's having been passed over for the opportunity to change her "days off," indicating that "days off" is an issue strictly in the purview of the unit commander.

67. With regard to Plaintiff's complaint about Officer Brian Buddy, Lt. Iuillucci stated that the investigation revealed that Officer Buddy did fail to treat Plaintiff with respect and that he did retaliate against Plaintiff by making inappropriate statements to other staff members.

68. As to the issues of "rotation" of shifts, Lt. Iuillucci only mentioned that he made recommendations to the County Administrator, but failed to indicate what was contained within those recommendations.

69. On January 3, 2013, Plaintiff emailed a complaint form for "Violence in the Workplace Prevention Program" to Warden Geraldine Cohen, regarding the confrontation by Officer Brian Buddy.  Plaintiff further expressed to Lt. Steven

Iuliucci that she feared for her safety and was very afraid of what Officer Buddy could do to her.  Plaintiff requested that Officer Buddy be placed on a different shift from her.  Lt. Iuliucci responded by stating "no" and indicated that Officer Buddy would remain on Shift #2 unless he bid otherwise.

70. On January 4, 2013, Plaintiff discussed the EEO investigation and findings with Nancy Marzolino EEO Officer, Atlantic County Government, Department of Administrative Services.  Marzolino stated the following to Plaintiff: "Yes, they discriminated against you, but it was an accident."

71. On January 4, 2013, Nancy Marzolino EEO Officer, Atlantic County Government, Department of Administrative Services, sent a letter to Plaintiff memorializing the fact that they met and discussed the matter.  In that letter, Marzolino restated that she had found a violation of County Policy 4.02 Non-Discrimination and a violation of County Policy 3.02 Workplace Standards. Marzolino made no reference to her finding that "it was an accident" in that letter.

72. On March 21, 2013, Plaintiff received a letter from Audrey McCant, Personnel Director, Department of Administrative Services, Division of Human Resources, Atlantic County, indicating that the investigation into Plaintiff's Violence in the Workplace complaint was complete.  The finding was that Plaintiff's complaint was not sustained.

## FIRST COUNT
## 38 U.S.C. §4301-4335 UNIFORMED SERVICE EMPLOYMENT & REEMPLOYMENT RIGHTS ACT OF 1994 ("USERRA")

73. Plaintiff incorporates and re-alleges by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

74. The Uniformed Service Employment and Reemployment Rights Act of 1994, 38 U.S.C. §4301-4335, (U.S.E.R.R.A.) forbids an employer from discriminating against an employee with regard to hiring, retention, promotion or any benefit of employment because of an employee's application for or membership in any uniformed service. 38 U.S.C. §4311(a).

75. The New Jersey Air Force National Guard is one of the enumerated "uniformed services" listed at 38 U.S.C. §4303(16). As stated above, at all times relevant hereto, Plaintiff was a member of said uniformed service.

76. Plaintiff's absence from work during deployment and military orders has solely been attributable to her performance of "service in the uniformed services" as that phrase is defined at 38 U.S.C. §4303 (13).

77. Plaintiff made proper notification about her mandatory military service dates to her employers at Atlantic County pursuant to 38 U.S.C. § 4312 (e)(A)(i), (ii).

78. At all times relevant hereto, Plaintiff was qualified to perform the duties associated with her position in the Classifications Unit, pursuant to 38 U.S.C. § 4303 (D)(9).

79. Defendants discriminated against Plaintiff based upon her military status by taking numerous adverse actions against her and by creating a hostile working

environment through numerous discriminatory acts, including, but not limited to the following acts:

a) Transferring Plaintiff out of the Classifications Unit within the County Jail based solely upon Plaintiff's status as a member of a uniformed service;

b) Said discrimination was related to Plaintiff's military Orders requiring her absence from work at the Atlantic County Jail;

c) Not properly addressing Plaintiff's complaints with regard to the law and by further retaliated against her as described above, and below;

d) Improperly reinstating her to her position following her military duty;

e) Not offering Plaintiff the change in "days off" that was offered to other employees, notwithstanding her seniority over other employees whom were provide with that opportunity. "Seniority" is defined in 38 U.S.C. § 4303 (D)(12);

f) Moving her desk assignment into the file room, rather than by properly reinstating her position.

80. In spite of plaintiff's complaints, no prompt or remedial action was taken to appropriately remedy plaintiff's complaints of discrimination.

81. To the extent any policy against discrimination existed it was ignored.

82. To the extent any remedial plan was discussed, it was ignored or continually not properly implemented.

83. Because of Defendants' actions, Plaintiff had to be placed on stress medication and had to wear a heart-rhythm monitor.   Plaintiff was further prescribed high blood pressure medication to help control an irregular heart rhythm.

84. Because of Defendants' actions, Plaintiff also suffered damages when she was forced to take a medical/stress leave due to the combination of events she was subject to.  This caused Plaintiff to lose vacation time, sick time, compensatory time and administrative time.

85. Because of Defendants' discrimination, and retaliation, Plaintiff has suffered damages and is entitled to the rights and remedies set forth in the Uniformed Service Employment and Reemployment Rights Act of 1994, <u>38 U.S.C. §4301-4335</u>.

86. Defendants' actions in failure to comply with U.S.E.R.R.A. was willful and thus defendants are liable for liquidated damages pursuant to <u>38 U.S.C. §4323(d)</u>.

87. The actions of the Defendants were outrageous and demonstrate a pattern and practice by the defendant of interference in plaintiff's rights.

88. The willful indifference of the Defendants creates liability against the defendants for punitive damages

89. Defendants' actions justify the imposition of punitive damages.

**WHEREFORE**, plaintiff respectfully requests that the Court enter judgment in her favor and against the Defendants for statutory damages under the Uniformed Service

Employment and Reemployment Rights Act of 1994, <u>38 U.S.C. §4301-4335</u>, compensatory damages, including damages for emotional distress, medical expenses, loss of reputation, personal injury, back pay, front pay, consequential damages, liquidated damages, punitive damages, pre and post-judgment interest, costs, reasonable attorney's fees, the cost of the suit, and such further relief as may be just and proper.

**SECOND COUNT**
**NEW JERSY LAW AGAINST DISCRIMINATON**

90. Plaintiff incorporates and re-alleges by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

91. The New Jersey Law Against Discrimination (LAD) prohibits an employer from discriminating against an employee on the basis of a person's membership in the Armed Forces.

92. Certain conduct included in the *Factual Background*, above, and complained of by the plaintiff would not have occurred but for the fact that the plaintiff was a member of a protected class, and/or spoke against the discrimination regarding her military status.

93. Defendants discriminated against Plaintiff as provided in detail, above.

94. The conduct complained of by the plaintiff was severe and pervasive enough to make a reasonable person believe that the terms and conditions of her employment were altered and that the working environment was hostile and abusive.

95. Plaintiff was harassed by the Defendants and other employees as sanctioned by defendants, as provided in detail, above.

96. Because of Defendants' actions, Plaintiff had to be placed on stress medication and had to wear a heart-rhythm monitor. Plaintiff was further prescribed high blood pressure medication to help control an irregular heart rhythm.

97. Because of Defendants' actions, Plaintiff also suffered damages when she was forced to take a medical/stress leave due to the combination of events she was subject to. This caused Plaintiff to lose vacation time, sick time, compensatory time and administrative time.

98. Plaintiff suffered damage to her reputation, work ethic and position due to Defendants' actions.

99. In spite of plaintiff's complaints, no prompt or remedial action was taken to appropriately remedy plaintiff's complaints of discrimination.

100. To the extent any policy against discrimination existed it was ignored.

101. To the extent any remedial plan was discussed, it was ignored or continually not properly implemented.

102. Plaintiff suffered medical manifestations due to Defendants' continuing course of action, as well as Defendants' sanctioning of Atlantic County Jail personnel's perpetuation of the discrimination.

103. The alleged actions were outrageous and beyond all bounds of human decency justifying the imposition of punitive damages.

104. The defendants' actions were performed with reckless indifference to the

plaintiff's protected activity.

105.    The plaintiff, as a direct and proximate result of the defendants' actions, suffered damages including, but not limited to emotional distress with physical manifestation of that distress, embarrassment, and humiliation.

106.    Plaintiff further incurred medical expenses.

107.    Defendants, by the foregoing actions, have discriminated against the plaintiff, caused plaintiff damage, and denied plaintiff opportunities for employment in violation of N.J.S.A. 34:19-1 et. seq. (NJLAD).

 **WHEREFORE**, plaintiff respectfully requests that the Court enter judgment in her favor and against the Defendants for statutory damages under the LAD, compensatory damages, including damages for emotional distress, medical expenses, loss of reputation, personal injury, back pay, front pay, consequential damages, liquidated damages, punitive damages, pre and post-judgment interest, costs, reasonable attorney's fees, enhanced under the LAD, the cost of the suit, and such further relief as may be just and proper.

## THIRD COUNT
## RETALIATION

108.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

109.    The U.S.E.R.R.A. prohibits an employer from retaliating against an employee who asserts their rights under the Act.

110.    Defendants retaliated against Plaintiff for having complained that her rights

22

under U.S.E.R.R.A. had been violated.

111. Defendants retaliated against Plaintiff, as described above, including but not limited to:

   a) Transferring Plaintiff to another unit;

   b) Changing Plaintiff's work schedule;

   c) Moving Plaintiff to another desk;

   d) Not advising Plaintiff about the opportunity to change "days off";

   e) Not advising Plaintiff about an open position of "day reporting";

   f) Ordering that Plaintiff be rotated out of Classifications;

   g) Blaming Plaintiff, and vilifying her for the rotation of employees;

   h) By advising other employees, including Officer Brian Buddy that the rotations were caused by Plaintiff's complaints.

112. As a result of defendant's conduct, plaintiff was damaged.  Defendant's conduct was beyond all bounds of decency and thus, punitive damages are appropriate.

113.  Because of Defendants' actions, Plaintiff had to be placed on stress medication and had to wear a heart-rhythm monitor.   Plaintiff was further prescribed high blood pressure medication to help control an irregular heart rhythm.

114.  Because of Defendants' actions, Plaintiff also suffered damages when she was forced to take a medical/stress leave due to the combination of events

she was subject to.  This caused Plaintiff to lose vacation time, sick time, compensatory time and administrative time.

115.    The actions of the Defendants were outrageous and demonstrate a pattern and practice by the defendants of interference in plaintiff's rights.

116.    The willful indifference of the Defendant creates liability against the defendants for punitive damages.

117.    The Defendants' acts of retaliation were performed with malicious and reckless indifference to plaintiffs' protected rights.

118.    Defendants' actions justify the imposition of punitive damages.

**WHEREFORE**, plaintiff demands judgment against the defendants, for compensatory damages, including damages for emotional distress, medical expenses, loss of reputation, personal injury, back pay, front pay, consequential damages, liquidated damages, punitive damages, pre and post judgment interest, reasonable attorney's fees, the cost of suit, and such further relief as may be just and proper.

## FOURTH COUNT
## RETALIATION

119.    Plaintiff incorporates and re-alleges by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

120.     The LAD prohibits an employer from retaliating against an employee who asserts their rights under the Act.

121. Defendants retaliated against Plaintiff for having complained that her rights under the LAD had been violated.

122. Defendants retaliated against Plaintiff, as described above, including but not limited to:

    a) Transferring Plaintiff to another unit;

    b) Changing Plaintiff's work schedule;

    c) Moving Plaintiff to another desk;

    d) Not advising Plaintiff about the opportunity to change "days off";

    e) Not advising Plaintiff about an open position of "day reporting";

    f) Ordering that Plaintiff be rotated out of Classifications;

    g) Blaming Plaintiff, and vilifying her for the rotation of employees;

    h) By advising other employees, including Officer Brian Buddy that the rotations were caused by Plaintiff's complaints.

123. As a result of defendant's conduct, plaintiff was damaged. Defendant's conduct was beyond all bounds of decency and thus, punitive damages are appropriate.

124. Because of Defendants' actions, Plaintiff had to be placed on stress medication and had to wear a heart-rhythm monitor. Plaintiff was further prescribed high blood pressure medication to help control an irregular heart rhythm.

125. Because of Defendants' actions, Plaintiff also suffered damages when she was forced to take a medical/stress leave due to the combination of events

she was subject to.  This caused Plaintiff to lose vacation time, sick time, compensatory time and administrative time.

126.    The actions of the Defendants were outrageous and demonstrate a pattern and practice by the defendants of interference in plaintiff's rights.

127.    The willful indifference of the Defendant creates liability against the defendants for punitive damages.

128.    The Defendants' acts of retaliation were performed with malicious and reckless indifference to plaintiffs' protected rights.

129.    Defendants' actions justify the imposition of punitive damages.

**WHEREFORE**, plaintiff demands judgment against the defendants, for compensatory damages, including damages for emotional distress, medical expenses, loss of reputation, personal injury, back pay, front pay, consequential damages, liquidated damages, punitive damages, pre and post judgment interest, reasonable attorney's fees enhanced under the LAD, the cost  of suit, and such further relief as may be just and proper.

ATTORNEYS HARTMAN, CHARTERED

Dated:  6/24/13                    By: _____/Katherine D. Hartman/ **(KDH 8357)**_____
                                             KATHERINE D. HARTMAN

26

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs hereby demand a trial by jury as to all issues in the above matter.

ATTORNEYS HARTMAN, CHARTERED


Dated: 6/24/13                By: _____/Katherine D. Hartman/ **(KDH 8357)**_____
                                     KATHERINE D. HARTMAN




## DESIGNATION OF TRIAL COUNSEL

Katherine D. Hartman, Esquire, of Attorneys Hartman, Chartered is hereby designated as trial counsel in the within matter.


ATTORNEYS HARTMAN, CHARTERED


Dated: 6/24/13                By: _____/Katherine D. Hartman/ **(KDH 8357)**_____
                                     KATHERINE D. HARTMAN

27